Good morning. May it please the Court, I'm Ray Halperin on behalf of the Petitioner. Basically this case presents fundamental questions regarding fundamental fairness in immigration court proceedings. Petitioner is married to a United States citizen and has a United States citizen child. She presented an application with the government to adjust her status to that of a lawful permanent resident. The government accepted the application, provided her work authorization, which provided her a social security number, and entitled her to remain legally in the United States. At the time of her interview with the immigration, she was informed that there was a prior deportation order entered against her four years prior. So we filed a motion to reopen based on defective service. Basically, the government asserted that she had filed an application for asylum. There was nothing in the file to determine whether she was even set up for an interview for the asylum application. There was a notice to appear in the file. There was a certificate of service of a certified return mailing, which was a week, apparently a week after the notice to appear document was dated. There was no certified return receipt whatsoever. There was no hearing notice issued by the immigration court. The in absentia order, which was ordered by the immigration court, was not normally the immigration court would mail the in absentia notices by certified return receipt. There was absolutely no mailings whatsoever done by the immigration court whatsoever. This Court held in a Ninth Circuit case of Busquets v. Vars that there is no rebuttable presumption of delivery when the return to reopen was filed with the immigration judge. The immigration judge then determined that it was enough that there was a notice that there was a certified return receipt sent, even though there was no return receipt in the file whatsoever. In an unpublished decision by this Court in 2004, and I'm going to go back to that. Kagan, you're not permitted to cite unpublished decisions, and there's quite a bit of published law. Correct. I'm in your favor on this, so I would stick to the precedent. Okay. Thank you. I'm sorry. Okay. So when the immigration judge denied that, we filed a motion appeal to the BIA. And in that appeal, we supplemented the fact that that address that we don't even know if anything was even sent by the immigration. But in any event, that address that they provided, that they got from the asylum application, was totally different than the what the client would ever have provided, because that asylum application, which was in that file, which we still don't know if that belonged to the petitioner, was totally incomplete. You know, you only have ten minutes. We know all these facts. Okay. We know what happened to her. We know that she went to a notario to get some sort of assistance, and then the next thing she finds out was this notario filed an application for asylum. It had her name on it. It had her birthday, but it had her coming from Chiapas when she was from Huerta Rango. Is that right? Correct, Your Honor. And they had a different person's picture on there, right? Correct. And all, you know, all that other stuff that was manufactured. She never signed it. It wasn't her signature. Why the INS is giving her a hard time, my comprehension. Correct. And also the BIA's actions are totally inconsistent with their other actions in similar cases with similar facts. In fact, their published decision in Ray Grijalva Barrera, they have another published decision in Ray B.B., and another one in Ray Rivera-Claros, they were all motions to reopen that were initially filed with different defective service, misdirection of counsel. And in all those cases, the BIA came back, and when the appeals were supplemented with an ineffective claim or additional Lizada requirements, they've accepted them, they've ruled them on the merits. The board in this case didn't even make any decision regarding whether notice was received whatsoever. They basically just said you should have raised an ineffective, you didn't, we're not going to entertain it. The fact that there was defective notice, that she never received notice, that the rebuttable presumption of the government never shifted because there was no certified return receipt, they didn't even raise that issue. So basically, the point is the law requires that notice be sent and that it be received. And in this case, Petitioner did not receive that. There's some question about why your client didn't file an affidavit with the original motion to reopen. Remember that part of it? Correct. That was what the board stated. But initially we filed based on defective service because there was nothing in the file to prove that the rebuttable presumption ever even shifted to the Petitioner, that no notice was received whatsoever. To save your remaining time, we'll hear from the INS. Good morning, Your Honor. Tom Holtzman for the Attorney General. The issue in this case is whether the board properly declined to adjudicate Garcia's motion to reopen filed five years after entry of an order of removal against her and far outside the 90-day period for filing motions to reopen. She said she never got notice. It went to some place where she didn't even live. Well, that's... You know, and she didn't sign it. It had somebody else's picture on it and all that. That would be obvious when she came down there. Well, I think what bothered the board here was that she filed a motion to reopen, but it was a properly supported motion to reopen might have done the trick here. But she filed a motion to reopen without any kind of affidavit. But who filed it for her? Ms. Halpern filed a motion to reopen without proper support. All right. Okay. But an affidavit isn't required, is it? It's certainly required for, in effect, for the counsel issues she's raised, it's What this Court has held in Salta is that in a case where there has been a certified mailing of a notice to appear, an affidavit will, a proper affidavit will rebut that. Wait, wait. Let me, let me. I don't think that's what Salta said. Is there a proof of attempted delivery or a certification in the government's file? In the government's file, there's not. There are references in the pleadings that the Petitioner filed to having seen a return receipt that was signed by somebody who was not Ms. Garcia. We don't know why. Nobody's been able to. I guess here's the thing. I can't figure out why it's not. Here's kind of the question I have. You know, I read Salta, and I know things have changed a little with certified and regular mail. Right. But if you have certified mail, then the great beauty of certified mail, unlike the great unwashed U.S. normal mail, is that you get a piece of paper that said it was delivered to whom and when and could be delivered to the wrong person, but at least you know it was delivered to the house and maybe a responsible person lives there. We don't have that here. And it just seems like through no fault of yours, because I know you're representing your client, but she doesn't get the notice. Nobody has proof that she got notice. And they took the care to send it by certified mail, but the government can't even show that certified mail went through. How does it make sense under Salta or the other cases not to simply grant the We now have probably gone, what, two more years just to talk about the notice. I can certainly see your point, Your Honor. And a properly supported motion to reopen with all of the claims made and properly supported may well have done the trick here. What the Board was concerned about was that she's raised an ineffective assistance of counsel claim in connection with the notice. She hasn't properly supported that. She hasn't even mentioned it in her motion to reopen. Well, but maybe that's a whole administrative issue. Maybe she gets the motion to reopen because she doesn't have the notice, and then that rises or falls, chips fall where they may just because of the normal rules on Lozada. I mean, she still gets her motion to reopen is granted at least so she can come back and show what she was supposed to show up and have a hearing about. So that's, I guess, maybe I wonder if you can split the two. Maybe you can't. I think it's difficult based on simply because the problem with the notice to appear is really very much intimately connected with the question of the asylum application, which is, we don't know for sure, but seems to be where the incorrect address, if that was what it was, came from. But even if you didn't have ineffective assistance of counsel and you just had that wasn't her address and that's not her and she didn't get the notice, why would you need to decide that issue to just say, okay, now you can at least you can have a hearing instead of the in absentia determination. That's what I'm wondering. Could you not split it in that way? You don't have to. I mean, the government isn't coming in saying this is actually her correct address and we know it was sent there. Now, see, if you said that, I'd say, well, maybe she's out of luck. Well, we think it was her correct address because of the asylum application. But you sent it by certified mail, correct? That's correct. But there's no see, the way SALTA reads, if there's proof of attempted delivery and notification of certified mail, a strong presumption of effective service arises. So my question really is, what do you make of certified mail when there is no proof of attempted delivery? We think that SALTA still applies, but there's certainly a weaker presumption that applies even if SALTA, even if you limits, if you cab and SALTA to the fact, to particular facts where there is a return receipt. There's still, and we've cited cases in our brief, there's still a presumption, and somehow that presumption has to be overcome. And in the motion to reopen, you would want some kind of affidavit saying, you know, saying what was said to the board. When did the affidavit come? The affidavit was filed before the board as part of the appeal from the denial of the motion to reopen. And the, I mean, I think there are some factual questions about the affidavit. For example, if you look at the photograph with the asylum, the asylum application, and you look at the photograph on her visa, which is on a visa she supplied at page 67 of the record, it's the same photo, or it's the same person. It's not the same photo, but it's the same person. So that raises some questions, too. Well, she claims that this was wholly done without her, without her knowledge filing this. It's not her photo she claims in her affidavit. Well, it certainly looks to me like the photo of the same person as in the visa, as with the visa. I think there are a lot of questions raised here that should properly have been raised before the immigration judge, and that's the original photo. Well, I have in my copy of the record, if you're, may I approach the bench? I mean, I can show you my copy of the record. I think I saw something in the record. There's pictures in there. There's Xerox copies. Here is the photo from the asylum application. Yeah, okay. And here is the photo of the visa. It looks very similar. Not to me, not to me. Well, they're not right. I don't think we're going to rule on whether she looks like. I think there are some serious questions here. But, see, that's my only point. She may be just lucky in the end, but I'm trying to really understand, honestly, why if you have certified mail and you don't have a receipt, and she didn't get, I mean, she would have shown up. She's got her affidavit now in the BIA. But she had them. It's solely on that, see, that BIA says she has not prevailed on her claim of defective notice. So that's the only thing I'm focusing on. What would she need? So you're saying the reason she didn't prevail is because she didn't present her affidavit until the time of the BIA appeal. That's correct. And that's the way the Board has, that's the way the Board treated it. In effect, it's like a procedural default. Yes, Your Honor. That would be a good way of putting it. And we would submit that the Board should be upheld on that basis. Well, how about the signatures on those documents? There are a number of signatures in the file. Her signatures. Yes. Well, there are a number of signatures that purport to be hers. The one on the asylum application looks somewhat like the one on her marriage certificate, which, and both of those look different from the other signatures. And, again, I'm not sure precisely what to make of it. And I think, but I think this is the kind of thing that should have been sorted out before the immigration judge. That's why the Board was so concerned and why the Board felt that there was a procedural default here. But you don't have any proof that anything was ever served on her. Right. You lost that copy. Right. We don't, apparently there was a certification somewhere, and where it is now we don't know. Half the files in the INS are lost anyway, aren't they? That I couldn't tell you, Your Honor. So what would happen if we were to do kind of what you said, although I know you wouldn't necessarily agree this is where it should go, but back to the BIA for remand to the IJ to, as you said, sort it out, and maybe they'll decide that the notice was received of some presumption or that there's fraudulent signatures or that she is who that other photo is. I mean, wouldn't that make sense to just figure that out and be on the way? Well, Your Honor, I think our position is it would have made sense for that to have happened in the first instance. And that's why we are asking the Court to affirm the Board and to deny this petition. And then what will happen to her? Are we going to kick her out of the country? She should be subject to removal. I mean, she is subject to removal now. She's got three American citizen kids born here. She's got a husband who's a citizen here. She's got her whole family here, right? And she went down there to adjust her status because her husband had an approved alien worker petition. That's what started all this for her again. And so she... I understand the way you feel, Your Honor. Sure. I mean, doesn't the government have a heart? And so she goes down there and that's when she says she learned for the first time that this notario had prepared and filed an asylum application in her name in 1997. But she admits that she used this notario. She alleges that she thought he was doing something else for her. That's right. They use these notarios and a lot of them are corrupt and the government knows it and goes along with it. It doesn't do anything about it. That's true, isn't it? Your Honor, I can only speak for what happened in this case. I'm sorry. But it's notorious. And so she goes there. This is what happens to her. She comes in in good faith, wants to adjust her status, and then the next thing you know, whatever long list of mishaps or whatever you want to call it, she's on her way out of the country. She's not from Chiapas, is she? Your Honor, I don't know where she's from. But what I do know is that she was here in violation of the immigration laws of the United States. Well, maybe Congress will save her, but then she'll have another case, precisely the one you point out, which is did she file an asylum application. So we'll have to wait and see. By the time we sort this out, Congress may sort it out. If the Court has no further questions, we would ask that the petition for review be denied. Thank you. I'm just going to reiterate a few points. First of all, as an in absentia deportee. She's faulting you for not filing an affidavit. What do you have to say about that? Well, basically, the fault, the presumption never shifted. There was no notice. There was no certified return of seats. The caseless have consistently held that. Furthermore, you're entitled to more than one bite at the apple when you're an in absentia deportee. So you can raise an argument. The BIA consistently with similar cases in their published decisions, as I said before, in Ray Grijalva, in Ray Beebe, in Ray Rivero, all those cases were additional. They weren't initially filed as ineffective claims and were basically, the basic argument here is that the government, the burden never shifted. She never received the notice. The board never made a defective notice. Instead, they said, oh, you should have made an ineffective. And in other similar cases where they said you should have the you made now an ineffective claim, they've considered it on their merits. So why is this case different from every other case? And when they didn't even, they abused their discretion by not even issuing a decision regarding the notice. They didn't issue a decision whether why isn't there a certified return receipt. They didn't issue a decision whether why there's no notice of hearing. They didn't issue a decision whether why. I know what they didn't do. But really, the question to you is, why didn't you file an affidavit? You, you know, you're the one that was, you're the one that's really criticized. And it almost sounds, from what you're saying, that you really said I'm not going to file an affidavit and then I'll file it before the board and she'll be able to stay at least another couple of years. Is that a right attitude on my part? No, Your Honor. Basically, when she appeared at the immigration interview in, for her adjustment of status interview, at that point she was informed that there was an order of deportation against her. She is married to a U.S. citizen with U.S. I know all that. So she had to file right away with, with the immigration judge in order so that her stay of removal, because literally she could have been detained right there and then pending these proceedings. So based on the quick review of the file, which she saw, and we didn't see the return receipt, that was the first argument that we would have raised, because we didn't know who this Carlos Luis Ruiz or whatever was at that point. We didn't know if it was an attorney, who filed, what filed. So then after when she did review the asylum application, then that's when she noticed that, wait a minute, this is totally not even. Okay, you've explained it. How long was it between the time it was in the immigration court and it, and it concluded in the immigration court in terms of the time for you to be able to file an affidavit? Well, basically it's in an absentia. An affidavit can be filed at any time. At any time. Right. But you waited until you appealed to do that. Exactly. Well, we initially filed right away based on the argument that was a clear-cut argument, which was the defective notice. That was the main argument where all the case law supports that there was. How would you even, if there was a defective notice with no affidavit, how can a lawyer say there's, how can you say it's not received? Well, basically, along with the motion was the adjustment of status application. In there was her visa, which proved that she wasn't, she didn't enter illegally as a government. How is anybody supposed to evaluate whether notice was received or not if she didn't say I didn't get notice? Because with the application, there was her biographical information. There was her, all her, and that lists where she lived. You've lost me on that one. That's all I have. Well, the question was. Makes no sense. Do you understand the last question? I mean, you're basically saying, here, here's all my application data, and I didn't get the notice. I mean. Well, normally the immigration judges will look at the, at the address which it was sent to and verify whether in the applications it lists that as an address, which in her case, that address that was sent to was not in her biographic information which lists all her years' presence in the United States in her address. But it was in a formal document filed. It's a, yeah, it's a biographical information. No, no. I mean, it's in an asylum application. No, no, no. We submitted in addition the adjustment of status. I understand that. But for all the I.J. knew, that other address was okay. Well, basically the I.J. didn't review the file to look at the, normally that's what the immigration judges will do. They'll say, okay, let's look at what she listed on her biographic information, which is what we submitted with the motion, to see whether that previous address four years ago was listed there, which it wasn't. I still don't have the answer of, now you're making a strong argument, maybe a good one, that she didn't receive the notice. And I don't understand, maybe she didn't understand why at that time, when you were before the immigration judge, she said, I didn't receive this. Now she says I didn't receive it. Well, why didn't she say it then? Well, she did say it then. She did. She never said it. You said it. Correct. We filed the motion to reopen with her supporting documents. Okay. Well, in other words, at the hearing, the initial hearing before the I.J. was brought out that the address that the immigration people had in their file was not her correct address? I'm sorry? When did the immigration judge find out that the address to which the government said it sent the notice was not her address? Well, that's precisely the point. The immigration judge never made that, never made a finding. He just basically said, okay, there's a certified notice that apparently something went out, so that's good enough. But on that certified notice in the records of the government, it was to her correct address, although there's no return receipt. Isn't that true? That's the way I understood the file. Now, one of the notices was addressed wrong, but the notice, certified mail, had the right address, but to which she says she never got, and there's no record of it. Well, there was no address there, and that's why there was no certified return receipt. There was no address on the government record? Well, there was an address that was sent, but there was no proof that it was sent. I understand that, but there's no proof that it was sent, but on the records, it showed her right address. Isn't that true? It shows the address that they got from the asylum application. Okay. And was that her address? And that wasn't her address. Was not her address. Was not her address. Well, then I misunderstood the record. Okay. Okay. There's nothing further. Not her address. So when did the IJ learn that that address was not her address, the address on the asylum application? When did he learn it? Yes. He never did. He never looked into the file. He didn't look, he didn't ask whether, as required, whether the address is a correct address. He just basically. Well, did you bring it up? Yes. In the motion to reopen. I mean, then at the hearing. There was no hearing. There was no hearing. But all the IJ has is motion to reopen. Yeah. IJ has the motion to reopen. He has the adjustment status. And he doesn't have an affidavit from her that says, look, I don't live at this address. If there was some notorial guy, I didn't ask him to file this. This looks like it's his address, not my address. I never got this thing. She never filed a simple affidavit. Well, that's one. Right. That's one. That's in regards to an ineffective. But here she was arguing defective notice. No. I mean, it's the same thing. Well, forget the guy. She never filed anything that says, I don't live at this address. She did, because she submitted with her adjustment application her information regarding her and where she's been living. I don't think you're getting our point. But we'll figure it out from the record. OK. Next time, file an affidavit. OK. I mean, a lot of times we're in these situations not because of the government, but because of the lawyer. And that's a real disservice to the immigrant or to the client. Well, a lot of it's got to do with the system, which is very precious. All right. Matters to both of you.
judges: Bright, Pregerson, McKeown